**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**HARTFORD LIFE INSURANCE COMPANY,**

                 **Plaintiff,**

  vs.                                                  **5:13-cv-77
                                                        (MAD/DEP)**

**KEITH POTTORFF, BRANDI BEERS,
SCOTT BEERS, and THE PENDING ESTATE
OF JANET L. POTTORFF,**

                 **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**PEPPER HAMILTON LLP**                **BRIAN P. DOWNEY, ESQ.**
100 Market Street
Suite 200
Harrisburg, Pennsylvania 17108
Attorneys for Plaintiff


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Hartford Life Insurance Company ("Hartford") brings this statutory interpleader action pursuant to 28 U.S.C. § 1335 against Defendants Keith Pottorff ("Pottorff"), Brandi Beers and Scott Beers (collectively, "Beers Defendants"), and the Pending Estate of Janet L. Pottorff ("Pottorff Estate"), seeking to resolve potentially competing claims for the proceeds of a life insurance policy issued to Janet L. Pottorff ("Decedent"). *See* Complaint, Dkt. No. 1. Defendant Pottorff, Decedent's husband and a named beneficiary of Decedent's life insurance proceeds, has been convicted of Decedent's intentional murder. Pursuant to New York's common law slayer rule, Defendant Pottorff is not entitled to receive such proceeds. Currently before the Court is

Hartford's renewed motion for default judgment. *See* Dkt. No. 22. Defendants have not opposed the motion, or otherwise appeared in this action.

## II. BACKGROUND

The Court has taken the facts set forth below from Plaintiff's complaint and accompanying exhibits. Janet L. Pottorff was insured by Hartford under policy number GL-677777 ("Policy") for a basic life insurance benefit of $20,000 ("Life Insurance") and a basic accidental death and dismemberment benefit of $23,750 ("AD&D"). *See* Complaint ¶ 1 & Exh. A.

On April 17, 2004, Decedent completed a Beneficiary Designation Form in which she designated Defendants Keith Pottorff, Brandi Beers, and Scott Beers as primary beneficiaries of the Policy. The Beneficiary Designation Form provides that "[p]ayment will be made in equal shares or all to the survivor unless otherwise indicated." Decedent designated 50% of the total benefit amount to her husband Keith Pottorff, 25% of the total benefit amount to her daughter Brandi Beers, and 25% of the total benefit amount to her son Scott Beers. Decedent did not name a contingent beneficiary. *See id.* ¶ 11 & Exh. B.

On July 20, 2012, Decedent died of asphyxiation from strangulation and/or suffocation; the manner of death was determined to be homicide. *See id.* ¶ 12 & Exh. C. At the time of the filing of the instant complaint, Defendant Pottorff was awaiting trial for the murder of Decedent. *See id.* ¶¶ 13-15. On March 7, 2013, Defendant Pottorff was convicted of murder in the second degree. *See* Appendix (Certificate of Conviction & Disposition).

Pursuant to the Policy,

> Life Insurance Benefits and benefits for the loss of life under the Accidental Death and Dismemberment Benefit will be paid in accordance with the life insurance Beneficiary Designation. If no beneficiary is named, or if no named beneficiary survives [Decedent], [Hartford] may, at [Hartford's] option, pay: (1) the executors or administrators of [Decedent's] estate; or (2) all to

> [Decedent's] surviving Spouse; or (3) if [Decedent's] Spouse does not survive [Decedent], in equal shares to [Decedent's] surviving Children; or (4) if no Child survives [Decedent], in equal shares to [Decedent's] surviving parents.

*See* Complaint ¶ 17 & Exh. A.

The Beers Defendants have separately signed and submitted claims for benefits under the Policy to Hartford. *See id.* ¶¶ 18-19 & Exhs. E, F. The Beers Defendants were subsequently paid their respective 25% shares of the benefits. *See id.* ¶ 20. Hartford believes that there is a question as to who should receive the remaining 50% share of the benefits. *See id.* ¶¶ 21-23. Hartford concedes that benefits are due and owing under the Policy, but is unable to determine to whom, and in what amounts, the benefits should be paid. *See id.* ¶ 25. The benefit at issue is in the amount of $21,875, plus accumulated interest. *See id.* ¶ 25.

Hartford filed this interpleader action on January 22, 2013, seeking to pay the proceeds of the Life Insurance and AD&D benefits into the court's registry, to enjoin the Defendants from pursuing any further claims concerning the Policy proceeds, and to discharge Hartford from any further liability based upon the Policy. On February 15, 2013, the Court granted Hartford's unopposed motion for leave to deposit funds into the court. *See* Dkt. No. 7. On February 26, 2013, the Clerk of the Court received two checks from Hartford totaling $21,945.64.

Following service of the Complaint on Defendant Pottorff and the Beers Defendants, and their respective failures to answer or otherwise respond, the Clerk entered default as to each. *See* Dkt. No. 10. Thereafter, on April 24, 2013, Hartford made a motion for default judgment pursuant to Fed. R. Civ. P. 55 as to Defendant Pottorff and the Beers Defendants. On October 2, 2013, the Court issued the following text notice: "According to the docket sheet, Defendant Estate of Janet L. Pottorff has not been served with the summons and complaint pursuant FRCP 4. Plaintiff's counsel is to inform the Court on or before October 18, 2013, whether Plaintiff intends

to serve or has served the Estate of Janet L. Pottorff[1]." Dkt. No. 15.  On the same day, Hartford filed a waiver of service executed by S. Frances Williams as attorney for the Pottorff Estate.  *See* Dkt. No. 16.  The Pottorff Estate failed to timely answer or otherwise respond to the Complaint, and the Clerk entered default accordingly.  *See* Dkt. No. 18.  On November 27, 2013, Hartford filed a motion for default judgment as to the Pottorff Estate which sought, *inter alia*, costs and attorneys' fees in the amount of $7,000.  *See* Dkt. No. 19.  In response to certain deficiencies in Hartford's initial motions for default judgment, the Court issued a text order instructing Hartford's counsel to re-file both motions for default judgment in compliance with Local Rule 55.2 and any application for costs and attorneys' fees in compliance with Fed. R. Civ. P. 54(d), including supporting affidavits and billing.  *See* Dkt. No. 20.

Hartford has re-filed a consolidated motion for default judgment, requesting that a default judgment be entered against all Defendants enjoining Defendants from instituting or prosecuting any proceeding related to the Policy benefits at issue here, discharging Hartford with prejudice from any further liability with respect to the Policy, and granting any further relief the Court deems just and proper.  *See* Dkt. No. 21.  The instant motion also requests that the Court determine to whom the Life Insurance and AD&D benefits should be paid.  *See id.*

### III. DISCUSSION

**A.	Jurisdiction**

---

[1] At the time Plaintiff instituted this action, an estate had not yet been opened or raised on behalf of Janet L. Pottorff.  *See* Complaint ¶ 8.  On or about July 18, 2013, letters of administration for the Estate of Janet L. Pottorff were issued to Scott Beers.  *See* Dkt. No. 13. The Court received a letter dated August 12, 2013, from S. Frances Williams as attorney for the Pottorff Estate in which Mr. Williams represented that Defendant Scott Beers wished to claim the insurance proceeds for the Pottorff Estate.  *See id.*  However, no appearances have been made in this case by Mr. Williams, the Pottorff Estate, or Scott Beers, either in his individual capacity or as administrator of the Pottorff Estate.

An interpleader action may be commenced under either 28 U.S.C. § 1335 (statutory interpleader) or Fed R. Civ. P. 22 (rule interpleader). For the court to have subject matter jurisdiction over a statutory interpleader action, there must be two or more adverse claimants of diverse citizenship. 28. U.S.C. § 1335(a)(1). In contrast, for the court to have subject matter jurisdiction over a rule interpleader action, there must be either diversity of citizenship or a federal question. Hartford has pled the instant action as a statutory interpleader action.

Here, the requirements for a statutory interpleader action are satisfied. Two or more of the adverse claimants are diverse. Defendant Pottorff is a New York resident, *see* Complaint ¶ 5, Defendant Brandi Beers is a Maryland resident, *see id.* ¶ 5, and Defendant Scott Beers is a Pennsylvania resident, *see id.* ¶ 7. Moreover, as noted above, Hartford has deposited the funds at issue into the registry of the court, as required under 28. U.S.C. § 1335(a)(2). Accordingly, the Court may properly exercise jurisdiction over the instant matter.

**B.    Default Judgment**

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 5:10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails to "plead or otherwise defend . . . the clerk must enter the party's default."'" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Group Merch. Serv's, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Intern.*, 655 F. Supp. 2d at 189 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Intern.*, 655 F. Supp. 2d at 189 (citation omitted). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (citation omitted).

Under Rule 55, "[a] default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2); *see also* L.R. 55.2. In addition, no default judgment may be entered unless the party seeking it files an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 App. U.S.C. § 521(b)(1)(A), (b)(4); *see also* L.R. 55.2. Pursuant to Local Rule 55.2, a plaintiff seeking entry of a default judgment "shall submit, . . . the Clerk's certificate of entry of default, a statement showing the principal amount due, not to exceed the amount demanded in the complaint, giving

credit for any payments, and showing the amounts and dates of payment, a computation of the interest to the day of judgment, a *per diem* rate of interest, and the costs and taxable disbursements claimed." L.R. 55.2.

The Complaint was served on Defendant Pottorff on March 8, 2013, but he has failed to appear or otherwise respond. Dkt. No. 22 ¶¶ 3-6 & Exh. 1. Defendant Brandi Beers was served on January 28, 2013, and she has also failed to appear or otherwise respond. *Id.* ¶¶ 7-10 & Exh. 2. Likewise, Defendant Scott Beers was served on January 29, 2013, and he has failed to appear or otherwise respond. *Id.* ¶¶ 11-14 & Exh. 3. Finally, the Pottorff Estate was served through counsel on October 1, 2013, and the Pottorff Estate has also failed to answer or otherwise respond. *Id.* ¶¶ 15-18 & Exh. 4. The Clerk of the Court entered default against each of the defendants. *See* Dkt. Nos. 10, 18. None of the defendants are infants, incompetents, or in the military. *Id.* ¶ 22.

Based on the foregoing, Plaintiff has established through its complaint, the exhibits thereto, and its papers in support of the instant motion that it is entitled to judgment in its favor. Accordingly, the Clerk shall enter judgment against each of the defendants precluding them from litigating the proper disbursement of the insurance proceeds and discharging Hartford from any further liability.

**C.     Disposition of the Policy Proceeds**

Under New York law, "one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered." *Riggs v. Palmer*, 115 N.Y. 506, 513 (1889); *see also In re Estates of Covert*, 97 N.Y.2d 68, 74 (2001); *In re Wright*, 20 Misc.3d 648, 650 (Sur. Ct., Westchester Co. 2008). The slayer rule is based on the fundamental maxim that no one shall be permitted to profit by his own crime. *See Riggs*, 115 N.Y. at 511. It applies even if the crime was

committed without the intent to acquire the victim's property or even to cause the victim's death. *See In re Estate of Alexis*, 14 Misc.3d 379, 381 (Sur. Ct., Nassau Co. 2006) (citations omitted). New York courts have declined to apply the slayer rule, however, where the killing was unintentional or accidental, done by reason of insanity, or done in self-defense. *See, e.g.*, *id.* at 381-82 (collecting cases).

Courts have long applied the slayer rule to prevent killers from receiving their victims' life insurance benefits. *See Mutual Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886) ("It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken."). The principle is also well-established in New York law. *See John Hancock Life Ins. Co. v. Perchikov*, No. 04 CV 98, 2010 WL 185007, *2 (E.D.N.Y. Jan. 15, 2010) ("Under New York law, a life insurance beneficiary who kills the insured is disqualified from collecting the insured's life insurance proceeds."); *In re Estate of Loud*, 70 Misc.2d 1026, 1027 (Sur. Ct., Kings Co. 1972) (finding that the application of the slayer rule is "the same whether we consider the right to inherit or the right to collect the proceeds of insurance . . . [p]ublic policy in this state denies benefits in both instances").

Under New York law, "[a] criminal conviction, whether by plea or after trial, is conclusive proof of the same facts in a subsequent civil proceeding and collateral estoppel bars a defendant from relitigating those issues that were raised, or may have been raised, in the criminal proceeding." *In re Estate of Savage*, 175 Misc.2d 880, 882 (Sur. Ct., Rockland Co. 1998); *see also Grayes v. DiStasio*, 166 A.D.2d 261, 262-63 (1st Dept. 1990). Defendant Pottorff was

convicted of second degree murder for his wife's homicidal death. *See* Appendix.[2] Under New York Penal Law § 125.25(1), such conviction is necessarily predicated on an "intent to cause the death of another person" and a rejection of any insanity or self-defense arguments. Thus, Defendant Pottorff's second degree murder conviction precludes him from recovering the proceeds of the Policy.[3] *See In re Estate of Alexis*, 14 Misc.3d at 384. Based upon his conviction

---

[2] The Court may take judicial notice of the fact of Defendant Pottorff's conviction, pursuant to Federal Rule of Evidence 201. *See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 62 (E.D.N.Y. 2012) (collecting cases).

[3] Defendant Pottorff has not appeared in the instant action to contest the applicability of the slayer rule and argue that he is entitled to the proceeds of Decedent's Policy. Thus, the Court may deem him to have admitted all of the well-pleaded factual allegations in the complaint. Nevertheless, the Court is mindful that some New York courts have declined to give preclusive effect to a criminal conviction pending appeal. *E.g.*, *In re Estate of Brown*, 132 Misc.2d 171, 172-73 (Sur. Ct., Monroe Co. 1986). This Court has contacted the Cortland County Clerk's office and the New York State Appellate Division, Third Department, and has been informed that Defendant Pottorff timely filed a notice of appeal but has not perfected such appeal.

There are two requirements to be satisfied before applying the doctrine of collateral estoppel. "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (citations omitted). "In New York, unlike other jurisdictions, the rule is that 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'" *Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193, 201 (S.D.N.Y. 1993) (citing *In re Amica Mut. Ins. Co.*, 85 A.D.2d 727 (2d Dept. 1981)). Rather, the existence of an appeal is one factor to be considered in determining whether a full and fair opportunity to litigate the issue existed. *Id.*; *see also In re Estate of Alexis*, 14 Misc. 3d at 383.

The Court has no evidence before it which would indicate that he did not have a full and fair opportunity to litigate his guilt. Pottorff has not appeared in this matter, and the Court is reluctant to further delay disposition of the Policy proceeds pending the outcome of an uncertain appeal. Thus, the Court is persuaded that the judgment of conviction is a sufficient basis for disqualifying Pottorff. *See Conn. Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. at 196-202 (applying slayer rule where decedent's husband had filed notice of appeal of murder conviction but had not perfected his appeal)*; In re Estate of Alexis*, 14 Misc.3d at 384 (applying slayer rule where decedent's spouse had filed notice of appeal of murder conviction, but time to perfect such appeal had expired absent extension); *In re Estate of Dorsey*, 161 Misc.2d 258, 259-60 (Sur. Ct., Dutchess Co. 1994) (applying slayer rule where decedent's son's appeal of murder conviction had been pending for three years and no date for argument had been scheduled).

for the second degree murder of the Decedent, Defendant Pottorff is deemed disqualified to receive the proceeds of Decedent's life insurance Policy.

Having determined that Defendant Pottorff may not receive his share of Decedent's Life Insurance and AD&D benefits, the Court must decide the proper disposition of those benefits. Decedent's Beneficiary Designation Form provides that "[p]ayment will be made in equal shares or all to the survivor unless otherwise indicated." Since Defendant Pottorff is disqualified from receiving any benefits, he is deemed to have predeceased Decedent, *see Union Sec. life Ins. Co. of N.Y. v. JJG-1994*, No. 1:10-CV-369, 2011 WL 3737277, *5 (Aug. 24, 2011 N.D.N.Y.) (citing *Matter of Macaro*, 182 Misc.2d 625, 631 (Sur. Ct., Westchester Co. 1999)), and his share of the proceeds passes to the surviving beneficiaries. Decedent designated 25% of the total benefit amount to her daughter Brandi Beers and 25% of the total benefit amount to her son Scott Beers, and did not name a contingent beneficiary. Consistent with the Policy terms, and Decedent's intentions as expressed therein, the Court finds that the Beers Defendants should share equally in the benefits at issue. In view of the foregoing, the Court finds that a judgment in favor of Brandi Beers and Scott Beers, and against Defendant Pottorff and the Pottorff Estate is appropriate. Accordingly, the proceeds of the Policy shall be released by the Clerk from the court's registry to Brandi Beers and Scott Beers in equal shares.

**D.     Attorneys' Fees and Costs**

With respect to fees, a federal district court "has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder in an action brought under the interpleader statute." *Guardian Life Ins. Co. of America v. St. Ange*, No. 11 Civ. 3468, 2012 WL 463894, *2 (S.D.N.Y. Feb. 8, 2012) (citing *Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989). A "reasonable award of fees and costs" is available to an interpleader plaintiff where

such plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *New York Life Ins. Co. v. Apostolidis*, 841 F. Supp.2d 711, 720-21 (E.D.N.Y.2012) (quoting *Septembertide Pub.*, 884 F.2d at 683). "It is well-settled that a stakeholder is not entitled to costs and fees it would have incurred in the ordinary course of business." *Fid. Brokerage Servs. LLC v. Caro*, No. 10 Civ. 5893, 2011 WL 4801523, *2 (S.D.N.Y. Oct. 11, 2011) (citation and internal marks omitted); *see also Travelers Ins. Co. v. Estate of Garcia*, No. 00 Civ. 2130, 2003 WL 1193535, *4 (E.D.N.Y. Feb. 4, 2003) ("[C]ourts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business."). A "typical interpleader claim does not involve extensive or complicated litigation, and thus fees should be relatively modest." *Estate of Ellington v. EMI Music Pub.*, 282 F. Supp. 2d 192, 194 (2003); *see also Weininger v. Castro*, 462 F. Supp. 2d 457, 502 ("In the usual case the [attorney's] fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." (quoting 7 Wright, Miller & Kane, Federal Practice and Procedure § 1719 at 686–87 (3d ed. 2001)).

In its prior motion for default judgment, Hartford sought $7,000 in attorneys' fees and costs, but failed to file its request with supporting affidavits and billing. The Court instructed Hartford to re-file a properly supported, consolidated motion for summary judgment. Hartford's renewed motion does not include an application for an award of attorneys' fees and costs.

The party seeking fees bears the burden of demonstrating that its requested fees are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Robinson v. City of New York*, No. 05 Civ. 9545, 2009 WL 3109846 (S.D.N.Y. Sept. 29, 2009). To that end, a fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours

11

expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Since Hartford has not specifically requested attorneys' fees and costs in its renewed motion, and the request in its prior motion was unsupported, the Court finds that an award of attorneys' fees is unwarranted in this case.

Even assuming Hartford had made a properly supported application for fees and costs, given the limited nature of the litigation and the amount in controversy, the Court finds that such an award would not be appropriate in this case. *See New York Life Ins. Co. v. Aleandre*, No. 13 Civ. 2384, 2014 WL 30508, *4 (S.D.N.Y. Jan. 2, 2014); *see also Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490 (2d Cir.1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary costs of doing business of their insured by bringing an action for interpleader."); *Feehan v. Feehan*, No. 09 Civ. 70162011, 2011 WL 497852, *7-8 (S.D.N.Y. Jan. 10, 2011) (declining to award attorneys' fees and costs where interpleader action was not complex, involved no unique problems, and insurer seeking interpleader provided no unique services and failed to explain how any court submissions exceeded the ordinary cost of doing business), *adopted by* 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011). This is a straightforward interpleader action over a modest fund.[4] The Court adopts the view that "[c]onflicting claims to the proceeds of a policy are inevitable and normal risks of the insurance business. Interpleader relieves the insurance company of multiple suits and eventuates in its discharge. Accordingly

---

[4] The Court notes that Hartford's initial, undocumented request sought $7,000 in fees and costs, which would account for approximately thirty percent of the fund at issue. Even if the Court were to determine that an award of attorneys' fees were appropriate in this case, it would significantly reduce Hartford's request. Other interpleader plaintiffs have managed to file actions and secure release from liability for far less in both absolute terms and in proportion to the fund. *See, e.g.*, *State Farm life and Assur. Co., Inc. v. Epps*, No. 12–CV–380S, 2013 WL 3992754 (W.D.N.Y. July 22, 2013) (awarding $2,000 in fees against a death benefit of $100,000).

[such actions are] brought primarily in the company's own self-interest." *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y. 1977); *see also Unum Life Ins. Co. of America v. Scott*, No. 10 Civ. 538, 2012 WL 233999, *3 (D.Conn. Jan. 24, 2012) ("[C]onflicting claims to the proceeds of insurance policies are normal risks of the insurance business and that the Plaintiffs' interpleader action is brought primarily in their own self-interest."). Hartford did not incur any unique expenses in filing the present interpleader action that would exceed the ordinary cost of doing business as an insurance company. *See, e.g.*, *Feehan*, 2011 WL 497852, at *8 (noting that attorneys' fees and costs are not appropriate where the "interpleader action is not complex," the insurance company "did not provide any unique services" and the "action [did not] involve unique problems"). Accordingly, the Court in its sound discretion declines to award attorneys' fees and costs to Hartford.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for default judgment is **GRANTED**; and the Court further

**ORDERS** that Hartford is hereby released with prejudice from all claims that were asserted or that could have been asserted by or through Defendants against Hartford in this matter; and the Court further

**ORDERS** that Defendants are enjoined from instituting or prosecuting any proceeding in any state or United States court against Hartford for the recovery of life insurance and accidental death and dismemberment benefits through a life insurance policy, No. GL-677777, insured by Hartford on the life of Janet L. Pottorff, deceased; and the Court further

13

**ORDERS** that the Clerk of the Court shall pay, from the Registry, the balance of the interest-bearing account representing the benefits due under the Policy to Defendants Brandi Beers and Scott Beers, separately, in equal shares; and the Court further

**ORDERS** that, upon payment of the Policy proceeds, the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 9, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge